**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CODY PAGE CARTER CONNELL &**<br>**DANIEL PAGE ADAMS,**<br><br>**Defendants.** | **Case No. 21-cr-84 (PLF)** |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' SENTENCING MEMORANDA

Both defendants, Cody Connell and Daniel Adams, allege that certain specific offense characteristics under U.S.S.G. § 2J1.2 cannot apply legally in the January 6 context or factually to their particular conduct. The D.C. Circuit and nearly every court in this district have approved the application of these enhancements. Both apply here.

United States Sentencing Guidelines ("U.S.S.G.") § 2J1.2, which applies to the "Obstruction of Justice," provides for an eight-level increase if the offense involved causing or threatening injury to a person or damage to property "in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1)(B). It also provides for a three-level increase "if the offense resulted in substantial interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2). Both defendants put forward legal and factual arguments: first, they assert that these enhancements do not legally apply, because the defendants' actions on January 6, 2021 did not relate to the "administration of justice"; second, they submit that, regardless, their conduct does not warrant either of the enhancements. Their arguments are without merit.

*1. The "Administration of Justice"*

To begin, the D.C. Circuit concluded that it is not plain error to apply both §§ 2J1.2(b)(1)(B) and (b)(2) in the January 6th context. *United States v. Robertson*, 84 F.4th 1045, 1070-71 (D.C. Cir. 2023). "[T]he ordinary meaning of 'administration of justice,'" the Circuit has ruled, "does not necessarily exclude Congress's certification of the Electoral College vote under 3 U.S.C. § 15." *Id*. The Circuit continued, "[t]he term 'justice' is defined as the 'fair and proper administration of laws,' which may pertain to the administration of laws by a legislative body." *Id*. Like the defendant in *Robertson*, neither Connell nor Adams "cite[d] . . . binding authority limiting the administration of justice to judicial or quasi-judicial proceedings." *Id*. While the Circuit's decision resulted from a plain error review, its precedential value is clear in its recognition of a sentencing court's ability to interpret the "administration of justice" more broadly than the cramped "judicial or quasi-judicial proceedings" definition the defendants put forward here.[1]

In any event, the defendants' arguments fail on the merits. Part J of Chapter 2 of the Guidelines covers "Offenses Involving The Administration of Justice." Section 2J1.2, in turn, is entitled "Obstruction of Justice." In the context of the Guidelines, there is every reason to think that when Section 2J1.2 refers to obstruction of or interference with "the administration of justice," it is using "administration of justice" as the companion to "obstruction of justice." Interference with "administration of justice" is what happens when a person obstructs justice. *See* Obstruction of Justice, *Black's Law Dictionary* (11th ed. 2019) (defining "obstruction of justice" as "[i]nterference *with the orderly administration of law and justice*, as by giving false information

---

[1] Notably, the dissenting opinion in *Robertson* focused on the majority's analysis of the meaning of "corruptly" in 18 U.S.C. § 1512(c)(2) and took no issue with the majority's analysis on the "administration of justice" sentencing enhancements. *Id*. at *19-33 (Henderson, J., dissenting).

to or withholding evidence from a police officer or prosecutor, or by harming or intimidating a witness or juror") (emphasis added). In other words, "administration of justice" in Section 2J1.2(b) is an umbrella term meant to cover all objects of the "obstruction of justice" captured by Section 2J1.2, rather than a limiting term meant to narrow Section 2J1.2(b)'s enhancements to only a subset of the covered obstruction offenses.

As judges in this district have explained, *see infra*, the defendants' arguments to the contrary fail to account for U.S.S.G. § 2J1.2's text and commentary. *See* U.S.S.G. § 1B1.1(b) ("The court shall then consider … any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence."). Section 2J1.2's commentary provides a broad definition of "administration of justice." It defines the term "[s]ubstantial interference with the administration of justice" to include "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or *the unnecessary expenditure of substantial governmental or court resources.*" U.S.S.G. § 2J1.2 cmt. n.1 (emphasis added). This definition goes well beyond "a judicial or grand jury proceeding" to include the unnecessary expenditure of substantial "governmental" resources. *Id.*[2] And because Note 1 is part of the commentary of § 2J1.2 that

---

[2] Although the commentary defines only the term "substantial interference with the administration of justice" in U.S.S.G. § 2J1.2(b)(2), and not the term "in order to obstruct the administration of justice" in U.S.S.G. § 2J1.2(b)(1)(B), the defendants offer no sound reason to interpret the same term in two specific offense characteristics in the same guideline differently. The relevant term in both provisions, "administration of justice," is identical. And the operative verbs, "interfere[]" and "obstruct," carry the same meaning in this context. The adjective "substantial" does not change the meaning of "administration of justice," especially since the commentary repeats the word, requiring "the unnecessary expenditure of substantial governmental . . . resources." U.S.S.G. § 2J1.2 cmt. n.1. Thus, the term "in order to obstruct the administration of justice" in U.S.S.G. § 2J1.2(b)(1)(B) should be read to include obstructive conduct aimed at nonjudicial governmental activities. A different conclusion would lead to the unlikely result of two different meanings for the term "administration of justice" within the same guideline.

interprets or explains a guideline, its interpretation is entitled to deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400 (2019); *Stinson v. United States*, 508 U.S. 36, 38 (1993).

The definition of "administration of justice" in § 2J1.2 cmt. n.1 is consistent with the term's ordinary meaning, which can encompass the application or execution of any law, including the laws relating to the electoral certification. One meaning of "justice," for example, is "[t]he fair and proper administration of laws." Black's Law Dictionary (11th ed. 2019) (definition 4). And some cases have defined "administration of justice" to mean "the performance of acts or duties required by law," *Rosner v. United States*, 10 F.2d 675, 676 (2d Cir. 1926) (quotation omitted), or "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving truthful testimony when subpoenaed," *United States v. Partin*, 552 F.2d 621, 641 (5th Cir. 1977). The electoral certification easily falls within this broad understanding of "administration of justice," because it involved Congress's performance of duties required by law. *See* U.S. Const. art. II, § 1, cl. 3; 3 U.S.C. §§ 15-18.

Further, U.S.S.G. § 2J1.2 applies to an array of obstruction statutes, including a number that do *not* involve the "administration of justice" in the narrow sense that the defendants advocate (i.e., relating to judicial proceedings). *See* U.S.S.G. § 2J1.2 cmt.; U.S.S.G. Appendix A; 18 U.S.C. §§ 551 (concealing or destroying invoices or papers relating to imported merchandise); 665(c) (obstructing an investigation under the Workforce Innovation and Opportunity Act); 1505 (obstruction of proceedings before departments, agencies, and committees), 1511 (obstruction of enforcement of state gambling laws), 1512 (obstruction of official proceedings), 1516 (obstruction of a federal audit), 1519 (destruction of documents in agency investigations); 26 U.S.C. § 7212 (interfering with the administration of the Internal Revenue Code). Yet, under the defendants'

interpretation of the guideline, enhancements under §§ 2J1.2(b)(1)(B) and (b)(2) would not apply to any of those statutes.

That is good reason to reject such a reading, as multiple judges have recognized. Judge Mehta's ruling in the Oath Keepers cases, for example, is instructive. There, the Court received extensive briefing and oral argument—*United States v. Rhodes, et al.*, Case No. 22-cr-15, 5/24/23 Sen. Tr. at 146-167 (attached)—and ultimately issued a lengthy ruling concluding that both "administration of justice" enhancements legally apply to the January 6th context, *Id.* at 167-177 (attached). As Judge Mehta ruled, in part:

> The original Guideline contained the eight-level enhancement for obstructing or attempting to obstruct the administration of justice by causing or threatening to cause physical injury to a person or property. It also included the three-level enhancement of substantial administration of justice. . . .
>
> So from that history, I sort of draw three interpretive conclusions. One is that, first, 2J1.2 as originally promulgated clearly encompassed 1512, which included obstructive conduct directed at a witness or victim in connection with an official proceeding, which was not limited to judicial proceedings but included a proceeding before Congress as Congress had defined it. Second, in 2J1.2, the commission was clearly attempting to capture a broad range of conduct. How do we know that? Because that's what they said. They said in the commentary that the conduct that gives rise to a violation may, therefore, range from a mere threat to an act of extreme violence. Third, the enhancements—that is, the eight-level and three-level enhancements—were included to address the most serious conduct, including obstructive conduct before an official proceeding, which, as I said, would include a proceeding before Congress.
>
> In other words, because this Guideline covered obstruction before an official proceeding, an "official proceeding" was clearly defined by Congress to include "proceeding before Congress." It would seem very odd to me that the Guidelines would be promulgated in a way to carve out a type of proceeding that Congress expressly held would be subject to and the object of obstructive conduct before it without -- not expressly saying so and not leaving us with this jigsaw puzzle that we're presented with. I think the much more natural reading of this is that the Sentencing Commission intended essentially for this original Guideline to be coextensive with the conduct that is captured in 1503 through 1513. There's nothing in here to suggest any other intent.

*Id*. For these reasons, among others, Judge Mehta explicitly rejected Judge McFadden's analysis in *United v. Seefried*, 638 F. Supp. 3d 8 (D.D.C. 2022). *Id*. at 167-68. After Judge Mehta's ruling in *Rhodes*, Judge Kelly upheld the application of both "administration of justice" enhancements and noted that Judge Mehta had "explained that the history and structure behind the first iteration of 2J1.2 reveal[ed] the Sentencing Commission's intent that it reach obstructive conduct coextensive with that captured in the relevant offenses, [18 U.S.C. §§] 1503 through 1512." *United States v. Nordean, et al.*, Case No. 21-cr-175, 8/31/23 Sen. Tr. at 19:9-14. As Judge Kelly remarked, "it would be very strange for the guideline to apply to offenses targeting all sorts of official proceedings, including those before Congress, and then carve those offenses out of reach for the specific offense characteristics." *Id.* at 19:17-21; *see also United States v. Rubenacker,* Case No. 21-cr-193, 05/26/22 Sen. Tr. at 69 ("There is simply no indication in guideline Section 2J1.2 that the [specific offense characteristics] containing the phrase 'administration of justice' were meant to apply to only some of the statutes referenced to this guideline and not to apply to all of the cases involving obstruction of proceedings taking place outside of courts or grand juries; that simply doesn't make sense."); *United States v. Wright*, No. 21-cr-341 (CKK), 2023 WL 2387816, at *5 (D.D.C. Mar. 4, 2023) ("To suggest . . . that the specific offense characteristics of § 2J1.2 only apply to some of the statutes referenced—would be counterintuitive and an unreasonable interpretation.").

Similarly, Section 2J1.2's background reaffirms that Section 2J1.2 broadly covers crimes such as intercepting grand jury deliberations, interfering with an illegal gambling investigation, or obstructing "a civil or administrative proceeding." U.S.S.G. § 2J1.2, cmt. bkgd. The background then states that the "specific offense characteristics" at issue here "reflect the more serious forms

of obstruction," *id.*, again indicating that those enhancements apply to the many obstruction offenses covered by Section 2J1.2 that do not involve interference with judicial proceedings.

In fact, many courts have applied U.S.S.G. § 2J1.2(b)(2) to proceedings that would *not* fit the defendant's narrow "judicial" definition of the "administration of justice." *See, e.g.*, *United States v. Ali*, 864 F.3d 573, 574 (7th Cir. 2017) (upholding the application of § 2J1.2(b)(2) after law enforcement officials expended substantial resources to recover the defendant's children he kidnapped and transported internationally); *United States v. Atlantic States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180, 205-08 (D.N.J. 2009) (applying § 2J1.2(b)(2) after a defendant interfered with OSHA investigations into a workplace accident); *United States v. Weissman*, 22 F. Supp. 2d 187, 194-98 (S.D.N.Y. 1998) (applying § 2J1.2(b)(2) after a defendant withheld subpoenaed documents from a congressional subcommittee); *United States v. Pegg*, 812 F. App'x 851, 860 (11th Cir. 2020) (upholding the application of § 2J1.2(b)(2) where defendant's "scheme and lies caused a substantial waste of resources, including hundreds of hours of work from the investigators") (citing *United States v. Johnson*, 485 F.3d 1264, 1271–72) (11th Cir. 2007)); *United States v. Meredith*, 602 F. App'x 102, 103 (4th Cir. 2015) (same); *United States v. Tankersley*, 296 F.3d 620, 623–24 (7th Cir. 2002) (same); *United States v. Harrington*, 82 F.3d 83, 87 n.2 (5th Cir. 1996), *as modified on reh'g* (Apr. 17, 1996) (same); *United States v. Voss*, 82 F.3d 1521, 1532 (10th Cir. 1996) (same)).

The uniform application of the specific offense characteristics to a broad array of obstruction statutes also fulfills the purpose of the Sentencing Guidelines. Indeed, "[a] principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct." *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018). The Guidelines therefore seek to achieve "a strong connection between the sentence imposed and

the offender's real conduct." *United States v. Booker*, 543 U.S. 220, 246 (2005). Consistent with this purpose, U.S.S.G. § 2J1.2 sets forth several specific offense characteristics that provide sentencing courts with tools to adequately address the "[n]umerous offenses of varying seriousness" that "may constitute obstruction of justice." U.S.S.G. § 2J1.2 cmt. The Sentencing Commission quite reasonably determined that obstructing justice by causing or threatening injury or property damage is more serious and deserves greater punishment. And causing or threatening injury to obstruct a congressional proceeding is just as serious as doing so to obstruct judicial proceedings. To avoid making §§ 2J1.2(b)(1)(B) and (b)(2) inapplicable to many of the statutes for which the guideline was designed, the commentary's broad definition of "administration of justice" should apply, as its text makes clear, beyond just judicial proceedings.

The defendants resists this straightforward reading of the Sentencing Guidelines by referring instead to how courts have interpreted the phrase "administration of justice" in entirely different statutes and contexts. They rely principally on cases from other circuits like *United States v. Richardson*, 676 F.3d 491 (5th Cir. 2012), and then turn to cases from this district including *United States v. Montgomery*, 578 F. Supp. 3d 54 (D.D.C. 2021). None of these cases shed light on the question at issue at his sentencing. In *Richardson*, the Fifth Circuit considered whether a defendant's false representations violated 18 U.S.C. § 1503 and ultimately concluded that there must be some "nexus" between the defendant's actions and judicial proceedings, such as court or grand jury proceedings. So *Richardson* interpreted the term "administration of justice" as that term is used in § 1503, which expressly addressed obstruction aimed at "grand or petit juror[s]," federal court officers, and magistrate judges. 18 U.S.C. § 1503(a). In that context, it was unsurprising that the court treated "administration of justice" as essentially synonymous with "judicial or grand jury proceedings." Indeed, *Richardson* and other cases Connell relies on focused on § 1503's "nexus"

requirement and had no reason to address—and did not address—whether the "administration of justice" could include non-judicial proceedings outside the context of § 1503, let alone whether that term carries a broader meaning in U.S.S.G. § 2J1.2 in light of that guideline's commentary. The Supreme Court has made clear that a term can have a different meaning in the Sentencing Guidelines than it does in a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). And, as noted above, the Guideline here (unlike 18 U.S.C. § 1503) includes its own definition focused on the "administration of justice," which covers "governmental *or* court" resources and intentionally applies to a wide variety of obstruction statutes, of which 18 U.S.C. § 1503 is but one.

The defendants' reliance on *Montgomery* is equally unavailing. There, Judge Moss addressed challenges to 18 U.S.C. § 1512(c)(2)'s application to the conduct at the Capitol on January 6, 2021. Section 1512(c)(2) prohibits, in relevant part, "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding." 18 U.S.C. § 1512(c)(2). The Court rejected the defendant's argument that an "official proceeding" under § 1512(c)(2) must be "court-like" or "relate to the administration of justice." *Montgomery*, 578 F. Supp. 3d at 62. The Court noted that the term "official proceeding" is defined to include "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and the Court stated that "with two narrow exceptions" (impeachment and qualification of its members), "Congress does not engage in adjudicative proceedings . . . or in the 'administration of justice.'" *Id*. at 65. Thus, the defendant could not establish that the term "proceeding before the Congress" in § 1515 (and as relevant to § 1512(c)(2)) was limited to "proceedings that are 'quasi-judicial' or that involve the 'administration of justice.'" *Id*. The defendants similarly point to this Court's decisions denying motions to dismiss in both *United States v. Puma*, 596 F. Supp. 3d 90, 100 (D.D.C. 2022) and his own case, *United States v. Connell and Adams*, No. 21-0084, 2023 WL 4314903 (D.D.C. July 3, 2023).

Neither the Court in *Montgomery* nor this Court in *Puma* or here said anything about the meaning of "administration of justice" as used in U.S.S.G. § 2J1.2, which applies to a broad swath of obstruction statutes that reach obstruction of non-judicial proceedings. In fact, Judge Moss later sentenced another defendant, Paul Hodgkins, for his conduct at the Capitol on January 6 and applied § 2J1.2(b)(2). *United States v. Paul Hodgkins*, 21-CR-188 (RDM). Same for this Court in *Puma*. Although both parties agreed to the enhancement's applicability, the Courts, as in all cases, retained the sole authority to determine what enhancements to apply and what sentence to impose.

Notably, nearly every court in this district has applied at least one, and many times both, of the "administration of justice" enhancements in the context of the Capitol breach on January 6—including at times when defendants have disputed the applicability of these specific offense characteristics with the same arguments the defendants put forward here. *See, e.g.*, Judge Lamberth (*Scott Fairlamb*, Case No. 21-cr-120); Judge Moss (*Matthew Miller*, Case No. 21-cr-75); then-Chief Judge Howell (*Greg Rubenacker*, Case No. 21-cr-193); Judge Cooper (*Thomas Robertson*, Case No. 21-cr-34); Judge Mehta (*Elmer Stewart Rhodes III, et al.*, Case No. 22-cr-15); Judge Hogan (*James Rahm*, Case No. 21-cr-150); Judge Bates (*Larry Brock*, Case No. 21-cr-140); Judge Chutkan (*Joshua Loller*, Case No. 21-cr-152); Judge Kollar-Kotelly (*Christopher Grider*, Case No. 21-cr-22); Judge Contreras (*Brian Gundersen*, Case No. 21-cr-137); Judge Friedrich (*William Reid*, Case No. 21-cr-316). Many of these judges confronted the defendants' arguments here—including that Judge McFadden's analysis in *Seefried* should apply—and many of these judges explicitly rejected that analysis opting for the more logically consistent and textually sound application detailed above.

Probation therefore correctly applied the "administration of justice" enhancements to both defendants in this case.

2. *The Defendants' Conduct*

The defendants likewise argue that, regardless of their legal applicability, the "administration of justice" enhancements do not factually apply here. This is not a close call. Both defendants have conceded that they forcefully assaulted law enforcement officers and that they did so as part of their actions and intentions on January 6 to corruptly obstruct an official proceeding. ECF 100 at 14-15.

As detailed extensively in the government's sentencing memorandum, the defendants were violent on January 6th. They breached the Northwest Stairs by spearheading an effort to charge against a line of Capitol Police officers with a violent mob behind them. Not only did these defendants "threaten" to cause bodily harm to these officers, they *did* cause harm by assaulting them, pushing them up the stairs, and forcing them to retreat. So much so that at least one officer defended himself and the Capitol by employing physical force back at Adams, causing Adams to bleed while he barged past and toward the Capitol. Then the defendants continued their push forward and breached the building after Connell pushed the Senate North Doors open—all actions making it reasonably foreseeable that property damage would also occur. And this was all while Congress was, by law, required to be engaged in a joint session to certify the Electoral College vote of the 2020 presidential election.

On this score, Chief Judge Howell's application of both "administration of justice" enhancements in *Rubenacker* is instructive. There, the defendant chased one United States Capitol Police officer inside the Capitol, assaulted other officers by throwing water on them, and engaged in conduct that compelled police officers to deploy chemical-irritant spray toward him and others on multiple occasions. All of this conduct resulted in "substantial interference with the administration of justice," because it contributed to the "unnecessary expenditure of substantial

governmental . . . resources," warranting the enhancement under U.S.S.G. § 2J1.2(b)(2). And the threatening and violent manner in which the defendant substantially interfered with the administration of justice warranted additional punishment, because Rubenacker's conduct "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice" under U.S.S.G. § 2J.2(b)(1)(B).   As Judge Howell explained:

> This was not one of the rioters who, on January 6th, merely walked inside the Capitol for a few minutes or seconds and then left with no encounter or engagement with any law enforcement officers. The obstructive conduct to which this defendant pled guilty included joining the mob and chasing Officer Goodman up the stairs outside the Senate Chamber, and then pointing and yelling at officers upstairs in the Ohio Clock Corridor at a time when Officer Goodman and the other officers were totally outnumbered. . . .
>
> His pursuit of Officer Goodman up the stairs into the Ohio Clock Corridor, in blatant disregard for this officer's instructions to stand back and leave, as the crowd of angry, yelling rioters swelled around him, constituted a clear and direct threat to the safety of Officer Goodman and could have led to Officer Goodman's physical injury. . . .
> This is especially true given the surrounding circumstances. These were officers, as I said, confronted with a mob of angry people shouting, shaking their fingers and fists at them, and refusing to comply with instructions to vacate the area; this was threatening conduct.

*Rubenacker*, Case No. 21-cr-193, 5/26/22 Sen. Tr. at 55-60 (attached). The same is true here. If a defendant chasing and yelling after one officer as part of a smaller mob constitutes "substantial interference" under Section 2J1.2(b)(2) and "threatening to cause physical injury" under Section 2J1.2(b)(1)(B), then certainly these defendants leading hundreds in a chase after multiple officers, assaulting those officers, and breaching the building also does.

For the reasons set forth above and in the government's sentencing memorandum, the "administration of justice" enhancements under U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) are applicable to both defendants. The government requests that the Court impose a sentence of

imprisonment of 51 months, 3 years' supervised release, $2,000 in restitution, and the mandatory

$100 special assessment for each count of conviction for both defendants.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:

TROY A. EDWARDS, JR.
N.Y. Bar No. 5453741
Sean McCauley
Assistant United States Attorneys
United States Attorney's Office
District of Columbia
601 D Street NW,
Washington, D.C. 20530
(202) 252-7081
Troy.Edwards@usdoj.gov