UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CODY PAGE CARTER CONNELL,<br>DANIEL PAGE ADAMSs<br><br>Defendant. | Crim. No. 21-cr-84 (PLF) |

**REPLY TO THE GOVERNMENT'S
MEMORANDUM IN AID OF SENTENCING**

Much has already been said with respect to the appropriate sentence in this case. This reply is simply to note that the sentence requested by the government would create unwarranted disparity with other similarly situated cases. *See* [Microsoft Word - Table of probation HD incarceration sentences.docx](#), [https://www.justice.gov/usao-dc/media/1331746/dl?inline](https://www.justice.gov/usao-dc/media/1331746/dl?inline).

Notably, despite dedicating a section to "The Importance of the Guidelines," with a now-reduced guideline range, the now seeks to have the Court essentially disregard the guidelines. Despite arguing for a guideline range of 30 to 37 months, in an unusual move, the government seeks an upward departure to a sentence 75% above the low end of that range. That would lead to a sentence that is disparate and unwarranted given the facts of this case. The government cites a few isolated cases where upward variances have been granted but fails to note that these cases represent a **very** small portion of the cases. In the vast majority of January 6 cases

sentenced to date, Judges have almost universally sentenced well below the requests of the government and well below the guidelines.

Similarly situated January 6 cases have received considerably less than what the government is seeking in this case in most cases. And even those who personally engaged in assaultive behavior and committed assaults under 111(b) have received sentences below what the government is seeking here. Counsel will not reiterate the cases already addressed in our supplemental sentencing memo but considering the overly harsh sentence requested by the government, counsel feels compelled to add the following sampling of cases:

<u>United States v. Bryan Smith</u> (23-cr-71-RDM)

Mr. Smith went to trial and was convicted on 111(a) and 231 charges as well as the misdemeanor charges. After his conviction, he was remanded to custody for violating his conditions of release. According to the government, while in custody he continued to make public excuses for his behavior and even at sentencing he expressed no remorse.  His actions on January 6 were also more egregious. According to the government he brought a stun gun to the Capitol and into the tunnel where he passed it to other rioters who were closer to the front of the crowd who then used it to assault officers. He engaged in the "heave-ho" in the tunnel and repeatedly harassed and yelled at police officers. He also posted on social media before and after the event. He also engaged in civil disorder, interfering with the ability of the officers to manage the riot, disregarding direct, lawful orders. The

government sought a sentence of 78 months[1] and the Court sentenced him to 34 months.

*United States v. Zachary Rash, 24-cr-298-RDM)*

Mr. Rash took the stun gun from Bryan Smith in the tunnel, checked it to make sure it worked, and then *twice* used it to assault officers before passing it to another rioter. He then took a police riot shield away from officers and passed it to other rioters at the back of the tunnel. He wrestled with officers over a door leading into the Capitol as the officers were trying to close it, thereby facilitating continued assaults. The government sought a sentence of 30 months for more egregious conduct and the Court sentenced Mr. Rash to 27 months.[2]

*United States v. James Mault (21-cr-657-BAH)*

According to the government, "During the riot, Mault encouraged police officers to stand aside and allow the rioters to invade the Capitol Building while it was still occupied by Members of Congress. When the vastly outnumbered officers refused to give way, Mault and [co-defendant] Mattice led the mob that penetrated the police line in the West Plaza, forcing officers to retreat to the Lower West Terrace. Later, with great personal effort, Mault made his way to the mouth of the Lower West Terrace tunnel and used chemical spray against the police officers who refused to yield to Mault and his confederates. Mault then obtained another canister of pepper spray that he gave to another rioter who used it to attack officers

---

[1] ECF Dkt 111, Government Sentencing Memo
[2] ECF Dkt 24, Government Sentencing Memo

3

in the tunnel."[3] Even before this, Mault had *directly* assaulted officers by using a different spray can on law enforcement, reaching deep into the tunnel from an elevated position and dispensing the contents of the spray by holding down the button for a full ten seconds. Furthermore, Mault lied to the FBI following January 6th, and then illegally re-enlisted in the army by failing to mention his criminal charges from January 6th on the military security clearance application. Mault pleaded guilty to assault and was sentenced to 44 months incarceration. His conduct was far more egregious and he was sentenced to less than the government is seeking here.

<u>United States v. Justin Jersey (21-cr-35-RC):</u>

Justin Jersey went to the Capitol carrying a gnarled wooden stick that was approximately four feet long and several inches thick. Jersey was approached by another rioter (Jonathan Mellis, *21-cr-206-RDM*) at the tunnel who told him to "knock their masks off." Jersey then handed the stick to Mellis who "wielding the stick like a sword stabbed at the faces and heads of officers at least five times, violently striking Officers D.P. and L.M. in the face, head, neck, and body area" before eventually throwing the stick at officers inside the tunnel. [4] After passing off his stick, Jersey assaulted Officer A.W. by knocking him to the ground and grappling with his baton. Jersey then grabbed another baton and struck at other officers at the tunnel archway. Meanwhile, Jersey's co-defendants further assaulted

---

[3] Government Sentencing Memorandum, ECF 61
[4] Government Sentencing Memorandum, Jonathan Mellis (21-cr-206-RDM), ECF 62

4

officer A.W. (who was still lying on the ground after being knocked down by Jersey) by beating him with multiple objects, resulting in immediate hospitalization for a head laceration requiring staples to close. Finally, Jersey stole an officer's helmet which he displayed proudly as a trophy in a bar near his home. For all this, Justin Jersey was sentenced to 51 months incarceration notwithstanding the government request for 63 months. His actions were far more egregious than those of Mr. Connell and Mr. Adams.

*United States v. Alan Byerly (21-cr-527-RDM):*

Alan Byerly was charged with assault (111b) for assaulting several officers with a stun gun but pleaded guilty to assault (111a) and striking another person (113) for assaulting a reporter. According to the government, Byerly engaged in three separate assaults-- he activated a stun gun on one police officer and when it was taken by officers, **he physically struck them** and pushed against them, grabbing an officer's baton, he assaulted a group of officers using an enormous all metal Trump billboard with sharp edges that was capable of splitting someone's head open as a battering ram, and viciously assaulted a member of the press, dragging him up and down the staircase. As the government described it, "Byerly grabbed the victim with both hands near the victim's shoulder and upper chest and pushed him backward. Byerly then pushed and dragged the victim past the site of the original altercation and towards a dense crowd. Byerly eventually placed both of his hands in the area of the victim's face and neck and continued to shove and push the victim away from the stairs, and toward a low stone wall that

separated the stairs of the West Front of the Capitol Building from the west lawn below." A weapon enhancement under 111(b) was not applied. The government requested 46 months incarceration, a sentence at the top of his guideline range of 37-46 months, noting the following: "Byerly committed three separate assaults on January 6, 2021, two against different police officers at different times and places, and one against a news reporter. His stipulated Guidelines range, however, is no higher than it would have been had committed only a single assault."[5] The Court sentenced Byerly to 34 months incarceration.

*United States v. Bruno Cua (21-cr-107-RDM):*

Cua, armed with pepper spray and a stolen baton, attacked a police officer inside the US Capitol building who was attempting to lock the doors to the Senate gallery. After assaulting the officer, Cua then rushed into the gallery, jumped down to the Senate floor and sat in the Vice president's chair with his feet up on the desk. He then opened another door, allowing dozens of other rioters onto the floor. Cua then rifled through multiple desks belonging to US Senators but not before using his jacket to attempt cover the lens of a nearby surveillance camera. Cua was convicted of two felonies (111a and 1512) in a stipulated bench trial and was sentenced to 12 months +1 day. The Government had requested 57 months imprisonment.[6]

*United States v. Matthew Miller (21-cr-75-RDM):*

---

[5] *Id.*
[6] ECF 328, Government Sentencing memo

Miller pleaded guilty to assault (111a) and obstruction (1512) after he threw beer cans and batteries at officers, and unleashed the contents of a fire extinguisher on more than a dozen officers as other rioters were assaulting them. The same fire extinguisher was then retrieved by defendant Robert Palmer who emptied the remaining contents on law enforcement and later threw the same fire extinguisher at police. Matthew Miller was sentenced to 33 months incarceration notwithstanding the government's request of 51 months.[7]

*United States v. Landon Copeland (21-cr-570-RDM):*

Copeland pushed and fought with several law enforcement officers on the west front, engaged in hand-to-hand combat, disarmed officers by grabbing a police baton, and then used a bike rack to charge at and assault officers. Ultimately, he threw the barricade forcefully at officers.[8] He gave media interviews and expressed no remorse for his conduct. Instead, he threated to return with guns. And he threatened his pretrial services officer. The government requested a sentence of 52 months, and he was sentenced to 36 months.

*United States v. Michael Lockwood (23-cr-146-RDM):*

Lockwood elbowed an officer on the Lower West Terrace. He grabbed that same officer and wrestled with him, attempting to take his baton. After obtaining it, he took it home and posted pictures of the baton and bragged about having a souvenir. The government sought 27 months and he was sentenced to 12 months and one day.

---

[7] Government Sentencing Memorandum, ECF 67
[8] ECF39, Government Sentencing memo

*United States v. Luke Hoffman (23-cr-329-RDM):*

Hoffman confronted officers at the mouth of the Lower West Terrace tunnel. He aggressively pulled a bike rack fence away from officers and then assaulted another officer by grabbing his police baton. He later sprayed OC spray at an officer. He was wearing a tactical vest and gloves and carried a can of OC based spray and a knife. He pleaded guilty to two 111(a) charges and agreed that a dangerous weapon was used. He got the benefit of not having to plead to 111(b).[9] The government sought 51 months and the Court sentenced Hoffman to 20 months.[10]

*United States v. Patrick Montgomery (21-cr-46-RDM):*

According to the government, Patrick Montgomery grabbed a baton and wrestled an officer onto the ground where he continued to fight for control of the baton, directly kicking the officer in the chest. He then illegally entered the Capitol building where he traversed several floors of the building and was one of the first to enter the Senate Gallery after witnessing others assault the officers who were guarding it. Patrick Montgomery was arrested on January 17, 2021, originally on misdemeanors which were later superseded to include Obstruction and Assault. He successfully delayed his trial for over three years before being convicted of both felonies (111 and 1512) in a stipulated bench trial. The government later moved to vacate the 1512 conviction following *Fischer*. During trial, the Court described Montgomery's actions on January 6th as "aggressive and highly confrontational."

---

[9] Government Sentencing Memorandum, ECF 27
[10] Judgement, ECF 35

During closing arguments, Montgomery through counsel, blamed the officer for Montgomery's own assault against him.[11] Montgomery also has an extensive criminal history, most notably a weapons possession conviction which occurred in 2021 just six weeks after the Court had set a condition of release prohibiting such. The court sentenced Patrick Montgomery to 37 months incarceration notwithstanding the government request of 41 months.

<u>United States v. Brian Mock, 21-cr-444 (JEB)</u>:

Mock helped other rioters remove police barricades at the northern end of the West Plaza and committed four separate assaults against police officers. He pushed one officer to the ground and kicked or attempted to kick him. He threw a broken flagpole at another. He pushed a third officer in the back. Mock shoved a fourth officer to the ground, using both hands and all of his body weight to do so, leaving the officer vulnerable to the mob. Mock then stole two USCP riot shields and passed them back to other rioters. Mock was convicted in a bench trial on all 11 counts, including the assaultive conduct. The Government recommended a sentence of 109 months. Mock was sentenced to 33 months.[12]

<u>United States v. Sargent, 21-cr-258 (TFH)</u>:

Sargent pleaded guilty to assault on a police officer (111a) and civil disorder (231), among other charges, and was sentenced to 14 months incarceration when the government requested 27 months. In addition to twice swinging at an officer, he

---

[11] Government Sentencing Memorandum, ECF 264
[12] ECF 112, Government Sentencing memo

recorded the scene on social media while boasting, "we got a clash of police going. . . Shit's getting fucking rowdy out here now. We got flash bangs."[13] After striking one officer, Sargent tried to strike another officer, but instead made contact with another protestor. At one point, that defendant bragged that he "duffed an officer in the face." He also told officers "fuck you guys, you guys are either with them or with us and repeatedly berated officers." After the riot, he repeatedly gleefully bragged about punching an officer. After his arrest, he lied to the FBI about his actions.[14]

<u>United States v. Leffingwell,</u> 21-cr-5 (ABJ):

Leffingwell, a 57-year-old veteran who entered the Capitol at the Senate wing doors and chanted at officers standing before him to "join us" and then, when two officers tried to repel him and the crowd around him, struck both officers in the head, landing three blows, pleaded guilty to assault (111a) and was sentenced to 6 months when the government sought 27 months.[15]

<u>United States v. Nicholas Languerand,</u> 21-cr-353 (JDB):

Languerand, an individual who had prior assaultive and threatening conduct, pleaded guilty to assault with a dangerous weapon (111b) after watching the violence for two hours before assaulting officers by throwing a piece of wood, a heavy black speaker, multiple sticks, and a large traffic cone, using a riot shield

---

[13] *United States v. Troy Sargent*, 1:21CR258(TFH), Gov. Sentencing Memo, ECF. No. 70.
[14] *Id.*
[15] *United States v. Leffingwell,* 1:21CR5 (ABJ), ECF. No. 4.

against the officers, and later bragging about and offering justifications for his violent acts, and was sentenced to 44 months when the government requested 51 months. Languerand also had an extensive arsenal when he was arrested, as well as writings deeply critical and menacing of the FBI and photos of the proud boys, three percenters, nazi iconography, etc. He posted that he had carried a firearm with him to the Capitol although there was no evidence that this was true.[16]

*United States v. Kevin Douglas Creek*, 21-cr-645 (DLF):

Creek, a former Marine who brought mace and a knife to the Capitol, pleaded guilty to assault (111a) after he pushed through the barricade and grabbed Officer JCM driving him back forcefully several feet, striking him in the face shield before letting him go (arguably a physical restraint) and shoved Officer RSE to the ground and kicked him. He also picked up a ratchet strap – a thick strap with heavy metal buckles and threw it at the officers.[17] He was sentenced to 27 months, the government's request.

*United States v. Howard Richardson*, 21-cr-721 (CKK):

Richardson bludgeoned a police officer three times with a long metal pole he brought to the Capitol, only stopping when it broke; less than 2 minutes later, he helped use an enormous metal Trump sign as a battering ram against police officers. He was sentenced to 46 months. There were however aggravating factors – he was on bail for illegal possession of a firearm on January 6; he made false

---

[16] ECF 34, Government Sentencing Memo.
[17] ECF 48, Government Sentencing Memorandum

representations to the Court during his plea hearing; and after his plea but before sentencing he was arrested again for aggravated assault and lied to the local police about his conduct.[18]

<u>United States v. Adam Jackson,</u> 22-cr-230 (RC):

Jackson pleaded guilty to assault on a police officer (111a) and was sentenced to 36 months of Probation with the special conditions of 12 months Home Detention and 52 weekends of Intermittent Confinement,[19] notwithstanding the Government recommendation of 41 months incarceration. Jackson hurled a large cone at officers, and then using a stolen police shield, and with a running start, he rammed the frontline officers, causing two of them to fall.[20]

<u>United States v. Grayson Sherrill,</u> 21-cr-282 (TSC):

Sherrill violently swung and struck an officer with a metal pole. He then roamed around inside the US Capitol building for 34 minutes, joining others in chanting "NANCY." Sherrill was sentenced to seven months incarceration. The government requested 41 months.[21]

<u>United States v. Thomas Hamner,</u> 21-cr-689 (ABJ):

Hamner was one of the first to breach the fencing around the Capitol perimeter. After wrestling barricades away from police on the west front, he

---

[18] ECF 35, Government Sentencing Memo.
[19] ECF 86, Judgment as to Adam Lejay Jackson
[20] ECF 80, Government Sentencing Memo
[21] ECF 124, Government Sentencing memo

assisted others in hurling a 10x10 Trump billboard at police. Hamner pleaded guilty to assault on an officer using a dangerous weapon (111b) and was sentenced to 30 months incarceration, notwithstanding the Government recommendation of 84 months.[22]

<u>United States v. Edward Rodriguez,</u> 21-cr-483 (DLF):

Rodriguez pleaded guilty to assaulting officers with a dangerous weapon (111b). He was sentenced to 36 months incarceration when the Government requested 88 months. Rodriguez joined others in pushing against police on the west front and then spraying officers with bear spray, hitting at least one of them directly in the eyes and injuring at least eight officers with the chemical irritant. Many of the officers required hospital care and recalled extreme pain and injuries; some reported that the skin on their faces and hands began to peel off.[23]

<u>United States v. Matthew DaSilva,</u> 21-cr-564 (CJN):

DaSilva was charged with assaulting police officers (111a) amongst other charges including Civil Disorder (231). He used his flagpole to block a door in an attempt to keep law enforcement from exiting the Capitol building. He then went to the tunnel where he remained for over 2.5 hours during which time he engaged in assault of front line officers and attempted to wrestle riot shields away from them. At trial, Officer J.S. recalled the pain he felt when DaSilva pushed against him. DaSilva's actions also caused another officer to lose balance, leaving him

---

[22] ECF 28, Government Sentencing memo
[23] ECF 62, Government Sentencing memo

exposed to a flying desk drawer thrown by another rioter which hit him in the head.  DaSilva was convicted of six counts in a bench trial. The Government recommended 52 months imprisonment, the midpoint of his guideline range.  He was sentenced to 28 months.[24]

<u>United States v. Nicholas Brockoff</u>, 21-cr-524 (CKK):

Brockhoff threw an unidentified item at police officers; assaulted multiple police officers in different locations using a fire extinguisher; obtained a police officer's helmet, wearing it throughout his afternoon rioting; entered the U.S. Capitol Building through a broken window that led to a Senate conference room; and once inside the building kicked in a door to gain entrance into a different, locked Senate conference room, which allowed others to enter the room as well; and rifled through belongings in the Senate taking home writing on a Senate notepad.[25] Brockoff pleaded guilty to assaulting officers using a dangerous weapon (111b) and was sentenced to 36 months incarceration as opposed to the Government recommendation of 51 months.

<u>United States v. Duke Wilson</u>, 21-cr-345 (RCL):

Wilson pleaded guilty to obstruction (1512) and assault (111a) and was sentenced to 51 months. He physically engaged in hand to hand combat with officers at the Lower West Terrace, punching, shoving and kicking them as well as trying to steal their riot shields. He then picked up a several feet long PCV pipe

---

[24] ECF 111, Government Sentencing memo
[25] ECF 55, Government Sentencing Memo

and struck at the officers, striking at least two different officers, and threw it into the crowd of officers. Despite these actions, the government allowed Wilson to plead guilty to 111(a) which did not include holding him responsible for the assault with the PVC pipe as a dangerous weapon.[26]

*United States v. Ricky Wilden,* 21-cr-423 (RC):

Wilden, a member of the Proud Boys, assaulted numerous police officers with a chemical irritant while he wore goggles that he had brought with him and then threw the canister at the officers; he entered the Capitol. After January 6 he deleted Facebook messages and videos.[27] He pleaded guilty to assault (111a) and the government sought 30 months. At the time of his sentencing, he had a pending charge for felony assault of his spouse with a deadly weapon and was using illegal substances while on release. Despite assaulting with a chemical irritant and the empty canister, he was not required to plead to the more serious assault charge and did not receive the dangerous weapon enhancement. He was sentenced to 24 months.

*United States v. Hernandez,* 22-cr-42 (CRC):

Hernandez pleaded guilty to assault (111a) and civil disorder (231) after he climbed through the window at the Senate Wing Door, entered the speaker's conference room and senate gallery, he hit a door in the hallway with his flagpole, and attempted to enter where congressional staff were barricaded in an office, he

---

[26] ECF 29, Government Sentencing Memo
[27] ECF 36, Government Sentencing Memo

then assaulted a police officer with his flagpole by hitting him in the head.[28] The dangerous weapon enhancement was not applied and he was sentenced to 24 months.

*United States v. Philip Young,* 21-617 (DLF):

Young pleaded guilty to all charges, including assault (111a) and civil disorder (231) without a plea agreement. The government requested a sentence of 40 months, and he was sentenced to 8 months. Early in the breach, Young rushed up the stairs, grabbed and lifted a barricade and pushed it into two MPD officers; after being forced back down the stairs, he pushed the barricade forward against the officers a second time.

*United States v. David Judd,* 21-cr-40 (TNM):

Judd was found guilty after a stipulated trial of obstruction (1512) and assault (111a). According to the government, Judd was fully aware of the certification process, intended to disrupt the activities of Congress before coming to D.C., and "acted as an on-the-ground commander of other rioters, directing, encouraging, and instigating the violence, chaos, and destruction in and around the tunnel . . . yelling commands to organize rioters, passing items into the tunnel to be used as weapons" etc. He then joined in coordinated pushes against the police line and lit a firecracker and threw it at the police line.[29] The government characterized his conduct as "some of the most aggravating conduct that we've

---

[28] ECF 32, Government Sentencing Memo
[29] ECF 527, Government Sentencing Memorandum.

seen on January 6th."[30] The firecracker was found to be a dangerous weapon, and the Court found that Judd intended to cause bodily injury by throwing the firecracker, but the Court disagreed with the guideline range of 78 to 97 months proposed by the government and probation and found a range of 37 to 46 months and then varied downward to impose a sentence of 32 months, finding the "advisory guideline produces an advisory sentence that is overly harsh."[31] The government requested a sentence of 90 months and he was sentenced to 32 months for far more egregious conduct.

*United States v. Kaleb Dillard*, 23-cr-00049-JMC

Dillard grabbed an officer by the vest and slammed him onto the ground where the officer hit his head on the marble floor inside the US Capitol building. This officer suffered vertigo and dizziness for three months following January 6th, but "could not attribute his head injury to any particular moment during the riot." Dillard pleaded guilty to the 111(a)(1), was given a two-point bodily injury enhancement, and was sentenced to 10 months incarceration. Of note, Dillard also used a metal object to smash the window of the east Rotunda door and was one of

---

[30] Transcript at p. 17; See also, Transcript at 26 (seeking a terrorism enhancement, the government represented 'the degree of his conduct was so great, and his intent was there so great, coupled with all of his other actions in the tunnel, which include directing the rioters, passing the shields in, passing the crutch in, telling people where to go, engaging in the heave-ho himself, this Defendant did it all, and he did it over the course of a long period of time."); Transcript at 53 ("looking at all of the January 6 rioters, I think this Defendant is at the high end of them also.)

[31] Transcript of Sentencing. The Court found the guideline range to be lower because of its reading of the 1512 guidelines.

the first people to enter the building through the east side. He also shoved another officer away from the door which resulted in the mob flooding into the building.

<u>United States v. Daniel Gray</u> (21-cr-495-ABJ).

According to the Government, Gray (a former martial arts teacher) physically engaged with multiple officers, causing a female officer to fall down a set of stairs, hitting her head and cracking her bicycle helmet. She suffered from post-traumatic stress disorder and continued to receive physical therapy for a pinched nerve. Daniel Gray pleaded guilty to two felony counts (1512 and 111a) and was sentenced to 30 months incarceration notwithstanding the government recommendation of 51 months imprisonment.

As a review of these cases as well as the cases cited in our supplemental pleading demonstrates, the government's request is unreasonable and would result in disparate treatment of these defendants compared to other individuals convicted for the same or worse conduct on January 6, 2021.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Michelle Peterson
Chief Asst Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

Counsel for Mr. Connell

_____/s/_____
Gary E. Proctor
233 E. Redwood Street, Suite 1000C
Baltimore MD 21202
(410) 444 1500

Counsel for Mr. Adams